**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mario R. GAITAN, Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rafael Leos NANEZ, Defendant–Appellant.**

Nos. 91–5524, 91–5613.

United States Court of Appeals,
Fifth Circuit.

Feb. 11, 1992.

Javier Padilla, San Antonio, Tex. (Court-appointed), for Mario R. Gaitan.

Hugo Xavier De Los Santos, San Antonio, Tex. (Court-appointed), for Rafael Leos Nanez.

LeRoy M. Jahn, Michael W. McCrum, Thomas J. McHugh, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for U.S.

Before HIGGINBOTHAM and BARKSDALE, Circuit Judges, and LITTLE, District Judge.[1]

BARKSDALE, Circuit Judge.

These consolidated appeals concern the sentencing guidelines' "career offender" enhancement, based, in part, on prior "controlled substance offenses". The issue turns on whether, in determining if a prior conviction is such an offense, its underlying facts, instead of only the offense of conviction, may be considered. Nanez also challenges not being allowed to withdraw his guilty plea. On the plea issue, we AFFIRM; for the sentences, VACATE and REMAND.

## I.

Gaitan and Nanez were sentenced in 1990 and 1991, respectively, by different district judges. Both judges concluded that the underlying facts for a conviction could be considered in imposing the career offender enhancement.

---

1. District Judge of the Western District of Louisiana sitting by designation.

## A.

Charged with conspiracy to possess, and attempted possession of, more than 1,000 kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846, Gaitan pleaded guilty to both counts in August 1990. His criminal history included a 1981 federal conviction for conspiracy to possess cocaine with intent to distribute and a 1982 state conviction for possession of marijuana. The presentence investigation report (PSI) concluded that both convictions were controlled substance offenses, and that, therefore, the U.S.S.G. § 4B1.1 career offender sentence enhancement was applicable.[2]

Gaitan objected, contending that the state conviction was not a controlled substance offense under the guidelines, because it was for possession, not possession with intent to distribute, as required by § 4B1.2(2). At the sentencing hearing in December 1990, the district court overruled the objection, finding that, for the state conviction, Gaitan had been arrested with 1,284 pounds of marijuana in his pickup truck and that this demonstrated an intent to distribute, not merely possess, the marijuana. Gaitan was sentenced, among other things, to 292 months' imprisonment on each count, to run concurrently.

## B.

Charged with distribution of heroin, in violation of 21 U.S.C. § 841(a)(1), Nanez pleaded guilty in January 1991. He had been convicted in 1982 on federal charges of conspiracy to possess and possession with intent to distribute marijuana, and in 1985 on a state charge of possession of heroin. The PSI included these as § 4B1.1 predicate controlled substance offenses, and, accordingly, classified Nanez as a career offender.[3]

Nanez, in March 1991, moved to withdraw his plea, contending that it was not knowing and voluntary, because his attorney had not advised him that he might be subject to the enhancement. After a hearing, the district court denied the request, finding that (1) the plea had been knowing and voluntary, (2) Nanez's only objection was to the guidelines, and (3) he had not asserted his innocence or advanced any defenses to the charges.

Nanez objected to the enhancement, contending that the state offense was for possession, not possession with the requisite intent to distribute. In April 1991, the district court overruled the objection, finding that Nanez had been in possession of heroin of a distributable quantity. He was sentenced, among other things, to 168 months' imprisonment.

## II.

■ We consider only the career offender and withdrawal of plea issues.[4]

---

**2.** At sentencing, Gaitan's total offense level was reduced by two levels for acceptance of responsibility. As a career offender, his sentencing (imprisonment) range was 292 to 365 months. Without the enhancement, the range (with the acceptance of responsibility reduction) would have been 135 to 168 months.

**3.** At sentencing, Nanez received the acceptance of responsibility reduction. Had he not been found to be a career offender, his sentencing range would have been 41 to 51 months; instead, it was 168 to 210 months.

**4.** In addition, Nanez asserts that he was denied his Sixth Amendment right to effective assistance of counsel by his counsel's failure to advise him that he could be classified as a career offender and that the district court relied erroneously upon hearsay testimony in finding him a career offender; Nanez and Gaitan contend that they were subjected to double jeopardy by

consideration of the underlying facts of their state convictions. These issues are rendered moot by our reversal of the career offender enhancement.

It may be that Nanez is also asserting an ineffective assistance of counsel claim, tied not to the career offender issue, but instead to his counsel allegedly advising him that, if he pleaded guilty, he could expect a sentence of approximately three years. Though this point was raised, somewhat, in district court, it was primarily, if not totally, in the context of the career offender issue. As a general rule, we decline to address ineffective assistance of counsel claims not raised in district court, because " 'no opportunity existed to develop the record on the merits of the allegations.' " *United States v. Munoz–Romo,* 947 F.2d 170, 179 (5th Cir.1991) (quoting *United States v. Higdon,* 832 F.2d 312, 313–14 (5th Cir.1987)). We will consider such claims " 'only in rare cases where the record allow[s] us to evaluate fairly the merits of the claim.' "

### A.

A guidelines sentence "must be upheld unless [the defendant] demonstrates that it was imposed in violation of the law, was imposed because of an incorrect application of the Guidelines, or is outside the range of applicable Guidelines and is unreasonable." *United States v. Parks,* 924 F.2d 68, 71 (5th Cir.1991); *see* 18 U.S.C. § 3742(e). Interpretation of the guidelines is a question of law, subject to *de novo* review. *E.g., United States v. Castro-Perpia,* 932 F.2d 364, 365 (5th Cir.1991). The district court's application of the guidelines to the facts is reviewed for clear error. *E.g., United States v. Medina-Saldana,* 911 F.2d 1023, 1024 (5th Cir.1990).

A defendant is classified as a career offender if:

(1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. Neither Gaitan nor Nanez disputes that each was at least eighteen at the time of their instant offense, or that their instant offense is a felony controlled substance offense, or that they have at least one prior predicate conviction. Instead, each asserts that he does not have the second prior conviction. In issue are two state convictions: Gaitan, for possession of marijuana; Nanez, possession of

heroin. Section 4B1.2, at the time of their sentencings, provided:

> The term "controlled substance offense" means an offense under a federal or state law prohibiting the manufacture, import, export, or distribution of a controlled substance (or counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, or distribute.

U.S.S.G. § 4B1.2(2).[5] Because the state convictions were not for possession *with intent to distribute,* the appellants contend that the convictions are not § 4B1.2(2) "controlled substance offenses".

The district court, at each sentencing, examined the facts underlying those convictions and determined that each involved intent to distribute. For example, as reflected in state records introduced at Gaitan's sentencing hearing, his two count state indictment was for possession and possession with intent to deliver (distribute); but, he was convicted only for possession. This notwithstanding, the district court stated that because Gaitan's state conviction was based upon possession of 1,284 pounds of marijuana, this "show[ed] intent to distribute, not merely single [simple] possession."[6] Gaitan and Nanez maintain, however, that whether they were convicted for a "controlled substance offense" under § 4B1.2(2) is controlled by looking solely at the offense of conviction, not the underlying conduct.

We review this legal issue *de novo;* it appears to be one of first impression.[7] On

---

*Id.* (quoting *Higdon,* 832 F.2d at 314). This is not such a case. Accordingly, we do not address the merits of this claim, if any, but without prejudice to Nanez's right to raise it in a proceeding under 28 U.S.C. § 2255. *Id.*

5. Section 4B1.2(2) was amended effective November 1, 1991, to include unlawful dispensing of, or possession with intent to dispense, a controlled substance. *See* U.S.S.G. App. C, amend. 433. Because Gaitan and Nanez were sentenced prior to that date, the 1991 amendments do not control. This notwithstanding, and as discussed *infra,* we consider them to the extent that they clarify application of § 4B1.2(2). *See United States v. Fitzhugh,* 954 F.2d 253, 255 (5th Cir. 1992).

6. As discussed in note 10, the district court and counsel used the term "simple possession" as opposed to possession with intent to distribute. The transcript provides, it appears erroneously, that here the district court instead used the term "single possession".

7. In *United States v. Cruz,* 882 F.2d 922, 924 (5th Cir.1989), this court pretermitted the question of "whether the facts underlying [a prior state] conviction [for illegal investment of funds derived from narcotics offenses] would support a conviction for conspiracy to possess marijuana with intent to distribute," and thus qualify as a § 4B1.2(2) "controlled substance offense". Instead, under the version of § 4B1.2(2) then in effect, the court found the offense to be "sub-

the other hand, "crimes of violence" may also result in application of the career offender provisions; and, in that context, this court has, for the § 4B1.1 "instant offense", allowed consideration of such conduct. *See, e.g., United States v. Shano,* 947 F.2d 1263, 1267–68 (5th Cir.1991), opinion withdrawn and superceded by 955 F.2d 291 (5th Cir.1992); *United States v. Goodman,* 914 F.2d 696, 699 (5th Cir.1990).

In *Goodman,* this court considered, for the first time, whether the definitional criteria for "crime of violence" under § 4B1.2(1) was met by possession of a firearm by a convicted felon. 914 F.2d at 698. In holding that all conduct related to the possession could be considered, *Goodman* relied on two factors. First, the court noted:

> Under ... § 1B1.3(b), "to determine the ... applicability of the career offender and criminal livelihood guidelines, the court shall consider all conduct relevant to a determination of the factors enumerated in [§ 4B1.1 and 4B1.2]." The Background to the Commentary indicates that "conduct that is not formerly charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range."

914 F.2d at 699 (citations omitted). Second, the court noted that "[a]dditional authority to consider all conduct relating to the offense is implied in the Commentary to 4B1.2." *Id.* At that time, the commentary provided:

> The Commission interprets [18 U.S.C. § 16's definition of crime of violence] as follows: murder, manslaughter, kidnapping, aggravated assault, extortionate extension of credit, forcible sex offenses, arson or robbery are covered by this provision. Other offenses are covered only if the conduct for which the defen-

dant was specifically convicted meets the above definition. For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction for an escape by stealth would not be covered. Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered.

U.S.S.G. App. C, amend. 268. Accordingly, *Goodman* held that it could "look beyond the face of the indictment and consider all facts disclosed by the record." 914 F.2d at 699. *See also withdrawn opinion in Shano,* 947 F.2d at 1267–68 (following *Goodman).*

This issue was revisited very recently in *United States v. Fitzhugh,* 954 F.2d 253 (5th Cir.1992). There, we noted that *Goodman* had applied § 4B1.2 as it existed before the 1989 amendments to the guidelines. Effective November 1, 1989, however, the above quoted commentary was replaced by the following:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has as an element the use[,] attempted use, or threatened use, of physical force against the person of another, or (B) the conduct set forth in the count of which the defendant was convicted involved use of explosives or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. App. C., amend. 268. In considering the effect of this change, the *Fitzhugh* court held:

> By amending § 4B1.2, the Sentencing Commission made clear that only conduct "set forth in the count of which the defendant was convicted" may be considered in determining whether the of-

stantially equivalent" to the statutory offenses then specifically listed in that guideline. *Id.; see also United States v. Brown,* 903 F.2d 540, 543–44 (8th Cir.1990) (same; following *Cruz).* Section 4B1.2(2) and its corresponding application note were amended effective November 1, 1989, to eliminate the listed statutory offenses

and any reference to "substantially similar" or "substantially equivalent" offenses. *See* U.S.S.G. App. C., amend. 268. Because Gaitan and Nanez were sentenced after November 1, 1989, that earlier version of § 4B1.2(2) does not apply.

fense is a crime of violence. We think this amendment shows that § 4B1.2 does not intend to define "crime of violence" by reference to conduct underlying the offense when the defendant is not charged and convicted of such conduct. In short, the Commission has repudiated *Goodman* and other cases which held that a sentencing court can look beyond the face of the indictment in considering this issue.

954 F.2d at 254.

*Fitzhugh* found further support for this interpretation in the 1991 amendments to the commentary to § 4B1.2. It noted that, "[a]lthough these amendments were not in effect at the time Fitzhugh was sentenced, we may consider them where, as here, they are intended only to clarify a guideline's application." 954 F.2d at 255 (citing *United States v. Nissen*, 928 F.2d 690, 694–95 (5th Cir.1991)). The recent amendments provide:

> The commentary [as amended in 1991] states that the term "crime of violence" includes offenses where "the conduct set forth, (*i.e.*[,] *expressly charged*) in the count of which the defendant was convicted" poses a substantial risk of physical injury to another. Moreover, the Commission added that "[u]nder this section, the conduct of which the defendant was convicted is the focus of this inquiry." If the 1989 amendments left any doubt as to the propriety of considering conduct for which the defendant was not charged and convicted, the 1991 amendments eliminated it. The sentencing court should consider conduct expressly charged in the count of which the defendant was convicted, but not any other conduct that might be associated with the offense.

*Id.; see also* U.S.S.G. App. C, amend. 433.[8]

*Goodman* turned on the guidelines in effect prior to November 1989. According-

ly, for our review of appellants' sentences (imposed in 1990 and 1991), the *Goodman* "crime of violence" analysis provides no support for allowing facts underlying an offense to be considered in deciding whether it is a § 4B1.2(2) "controlled substance offense".

Included offenses under § 4B1.2(2) are the manufacture, import, export, or distribution of a controlled substance, or possession of a controlled substance with the intent to commit the foregoing offenses. And, by the time Gaitan and Nanez were sentenced, § 1B1.3(b), construed in *Goodman* (quoted above), had been revised to read: "Factors in Chapter Four [including career offender provisions] and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines." U.S.S.G. App. C., amend. 77. Therefore, § 1B1.3(b) no longer provides a blanket reference to the career offender provisions and "all conduct relevant"; it cannot be used to expand § 4B1.2(2).

Moreover, nothing in § 4B1.2's commentary in effect when appellants were sentenced suggests that the Sentencing Commission intended underlying conduct to be considered in determining whether the offense of conviction is a "controlled substance offense".[9] The absence of such commentary is telling. *See United States v. Arellano-Rocha*, 946 F.2d 1105, 1108 (5th Cir.1991) ("The commentary to § 1B1.7 analogizes the [guidelines'] commentary to 'legislative history or other legal material that helps determine the intent of a drafter.' ").

A further interpretive guide is a Sentencing Commission publication, published in 1990 prior to imposition of either sentence,

---

8. The 1991 amendments also provide that unlawful possession of a firearm is not included within § 4B1.2's definition of "crime of violence." Application note 2 to § 4B1.2 now states that "[t]he term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon." U.S.S.G. § 4B1.2, comment. (n. 2); App. C., amend. 433. *Accord Fitzhugh,* 954 F.2d at 255.

9. The only mention of "controlled substance offense" in the commentary is that "[t]he terms 'crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2, comment. (n. 1); App. C, amend. 268.

intended "to assist in understanding and applying the sentencing guidelines." United States Sentencing Comm., *Questions Most Frequently Asked About the Sentencing Guidelines* (Vol. IV 1990) (front cover). We find it most persuasive. In fact, it squarely addresses the issue at hand:

> QUESTION [63]: Does a conviction for simple possession of a controlled substance qualify as a "controlled substance offense" within the meaning of the career offender guideline?
>
> ANSWER: *No. A conviction for possession of a controlled substance does not meet the definitional criteria of § 4B1.2. Even if the real offense conduct involved trafficking in controlled substances, the career offender enhancement is applied only if the offense of conviction is for a "controlled substance offense" as defined by the guidelines. According to § 4B1.2(2), the term "controlled substance offense" means an offense "under a federal or state law prohibiting the manufacture, import, export, or distribution of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, or distribute." This definition does not include simple possession.*

*Id.* at 17 (emphasis in original).[10]

In sum, neither the plain wording of § 4B1.2(2), nor its commentary, allows consideration of underlying conduct. Therefore, the district court erred in considering the conduct underlying the state possession convictions in order to expand them to possession with intent to distribute. Accordingly, because each appellant has only one prior predicate conviction, the § 4B1.1 career offender enhancement should not have been applied to either.

**B.**

A district court may allow a guilty plea to be withdrawn prior to sentencing upon the showing of "any fair and just reason". Fed.R.Crim.P. 32(d). "We will reverse [its] denial of a motion to withdraw a guilty plea only for abuse of discretion." *United States v. Badger*, 925 F.2d 101, 103 (5th Cir.1991) (citations omitted).

Seven factors are to be considered in deciding such a motion:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the Government; (3) whether the defendant delayed in filing the motion and, if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether adequate assistance of counsel was available to the defendant; (6) whether his plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources.

*Id.* at 104 (citing *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985)). As noted in *Badger*, "[n]o single factor or combination of factors mandates a particular result. Instead, the district court should make its determination based on the totality of the circumstances." *Id.*

The only objection raised by Nanez at his plea withdrawal hearing was that, prior to entering his plea, he was unaware of the possible application of the career offender enhancement. This court rejected a similar argument in *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 977, 112 L.Ed.2d 1062 (1991). For a plea to be knowing and voluntary, "the defendant must be advised of and understand the consequences of the [guilty] plea." *Id.*

---

**10.** As reflected by its use of the term, the publication's use of "simple" with "possession", does not indicate any distinction, other than that between possession as opposed to possession with intent to distribute. For example, it states that "conviction of possession of a controlled substance does not meet the definitional criteria of § 4B1.2." Of interest, this publication was relied upon by Gaitan at his sentencing hearing; and both the district court and counsel used the term "simple possession" as a means of distinguishing possession from possession with intent to distribute.

"The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged. As long as [the defendant] understood the length of the time he might possibly receive, he was fully aware of his plea's consequences."

*Id.* (quoting *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir.1990)). The district court informed Nanez, prior to accepting his plea, that he faced a maximum of 20 years' imprisonment and a $1,000,000 fine; Nanez acknowledged that he understood this admonishment. He received a sentence of 14 years (168 months) and a $1,000 fine. In short, he was fully aware of the consequences of his plea.

The district court carefully considered the above quoted factors in ruling on the request. Nanez did not assert his innocence or advance any defenses during the hearing.[11] The district court did not abuse its discretion in denying the motion.

### III.

For the foregoing reasons, we AFFIRM the denial of Nanez's request to withdraw his guilty plea. Because the career offender provisions should not have been applied, we VACATE Gaitan's and Nanez's sentences and REMAND for resentencing.

---

11. Nanez contends that, at the plea withdrawal hearing, he raised the defense of entrapment. He cites the following in support:

    THE COURT: ... Mr. Nanez, what were you going to say that you wanted me to know?

    \*   \*   \*   \*   \*   \*

    DEFENDANT NANEZ: ... I have never thought about doing anything like that, but that man, he kept asking me, wanting me to do it. All I wanted to do was to keep on working. I have three children in my family. And I have nine that live with me.

    This does not constitute raising an entrapment defense. Moreover, when the district court noted later that Nanez had not proffered any defenses, Nanez did not assert that he had, nor did he raise any at that point.